# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1442 | **DATE** | 7/16/2002 |
| **CASE TITLE** | Spitz, et al. vs. Tepfer | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order affirming the judgment of the bankruptcy court. Any pending motion in this case is terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | JUL 17 2002 date docketed | 18 |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | S.B. docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| MPJ | courtroom deputy's initials | 02 JUL 16 PM 2:58 date/time received in central Clerk's Office | date mailed notice mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ARTHUR H. TEPFER,<br><br>    Debtor<br><br>---<br><br>RONALD O. SPITZ, individually and as a trustee of **TEPFER & SPITZ, LTD., 401(K) PROFIT SHARING PLAN AND TRUST, TEPFER & SPITZ, LTD., DAWN C. MAGLIOLA,** and the **TEPFER & SPITZ, LTD., 401(K) PROFIT SHARING PLAN AND TRUST,**<br><br>    Plaintiffs,<br><br>v.<br><br>ARTHUR H. TEPFER,<br><br>    Defendant. | No. 02 C 1442<br><br>**DOCKETED**<br>**JUL 1 7 2002**<br><br>Appeal from 00 B 26835 |

## MEMORANDUM OPINION AND ORDER

In this opinion I address whether a bankrupt's creditors, who missed a deadline for filing an objection to the dischargeability in bankruptcy of two large attorneys' fee judgments they had won against the debtor, should nonetheless be able to avoid that discharge merely because the debtor had moved for relief from the automatic stay to prosecute his appeals from those judgments. I conclude that the creditors are out of luck.

Ronald Spitz and Arthur Tepfer owned equal shares of the Tepfer & Spitz, Ltd., 401(k) Profit Sharing Plan and Trust ("T&S"),

18

which they co-founded in 1991. In March 1995, Tepfer sued Spitz and T&S in Illinois state court, seeking judicial dissolution of the firm. Spitz won and was awarded $212,368.23 in attorney's fees, less $13,000 as a set-aside for the unpaid value of Tepfer's stock. On June 2, 1995, Tepfer withdrew $48,000 from T&S, and on June 8, he unilaterally executed an amendment to the T&S plan that proclaimed himself and two former employees to be 100% vested, entitling them to make withdrawals from the fund. Spitz, as Trustee of T&S, sued Tepfer and two other parties in this district, and won in the district court and on appeal. In August 2000, the court awarded the plaintiffs attorneys' fees. On September 13, 2000, the same day that the second fee award was entered, Tepfer filed for bankruptcy. On December 6, 2000, Tepfer sought retroactive relief from the automatic stay in his bankruptcy case to enable him to prosecute his appeals of the attorneys' fee awards entered against him, and this was granted on December 12.

On December 29, 2000, the plaintiffs initiated an adversary proceeding in the bankruptcy court, asking the court to determine that the fee awards were nondischargeable debts under section 523(a)(6) of the Bankruptcy Code, which they amended on January 30, 2001, to include an argument for nondischargeability under section 523(a)(1). This complaint was dismissed. On May 18, 2001, the plaintiffs filed an amended complaint. The bankruptcy court dismissed the plaintiff's section 523(a)(6) claims (counts III and

IV) with prejudice, and on February 6, 2002, awarded summary judgment to Tepfer on the section 523(a)(17) claims (counts I and II). This appeal followed. I affirm the judgment of the bankruptcy court.

I.

I review the bankruptcy court's factual findings for clear error, and I review its conclusions of law de novo. *In Matter of Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996). This case involves questions of pure law which I consider de novo. The first question is whether Tepfer's attorneys' fee judgments are nondischargeable under 11 U.S.C. § 523(a)(6), as involving "willful and malicious injury by the debtor to another entity or to the property of another entity." Under § 523(c)(1) and Bankruptcy Rule 4007(a) & (c), a creditor has sixty days to initiate an adversary proceeding under section 523 from the first meeting of the creditors. The "time limits of Rule 4007(c) must be 'strictly enforced.'" *In re Themy*, 6 F.3d 688, 689 (10th Cir. 1993); *accord Matter of Ichinose*, 946 F.2d 1169, 1172-73 (5th Cir. 1991). The plaintiffs' problem is that this period expired on December 11, 2000, but the plaintiffs did not initiate their adversary proceeding until December 29, 2000.

The plaintiffs argue that a court may extend the time for filing a complaint to determine whether a debt is dischargeable as long as the motion is made by a "party in interest" and filed

within the 60 days. Bankr. R. 4007(c). The plaintiffs admit that they themselves filed no such motion, but contend that Tepfer's motion for relief from the automatic stay, filed on December 6, 2000, qualifies as a Rule 4007(c) motion. The plaintiffs argue that Tepfer mentioned, among the reasons he gave the bankruptcy court to grant the relief from the stay so that he could pursue his appeals, that the plaintiffs had contended that the attorneys' fee awards were nondischargeable. The plaintiffs say that the bankruptcy court considered this issue at the hearing of December 12, 2000, but deferred a decision until after the appeals were concluded. The plaintiffs wish me to conclude that "a party in interest," namely Tepfer, in effect moved for an extension of time to determine nondischargeability.

The bankruptcy court, however, rejected this argument, calling it an argument for an "informal extension." Tr. at 6. The court correctly stated that Tepfer's motion "was never a request for more time to file a motion against debtor and was not so construed at the time." Id. at 8. The plaintiffs contend that Rule 4007(a) only requires that the motion for an extension be made by a party in interest, not necessarily by the plaintiffs, and that Tepfer is a party in interest. Both of these propositions are true, but the rule also requires that the party in interest actually make the motion, and Tepfer, unsurprisingly, did not here move to allow his opponents more time to contest whether his debts were

-4-

dischargeable; the bankruptcy court found that he did not do any such thing, and explained the scope and meaning of its own ruling, which it is entitled to do. *See In Matter of Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 974 F.2d 775, 779 (7th Cir. 1992) ("[I] give deference to a court's interpretation of its own orders.").

The plaintiffs argue that "there is substantial authority that the motion for relief filed before the deadline for filing objections to discharge and dischargeability *may* be treated as a motion for an extension of time to file a complaint objecting to dischargeability." *In re Tribble*, 205 B.R. 405, 407 (Bankr. E.D. Ark. 1997) (emphasis added). But they offer no argument that the conditions for this discretionary decision by the bankruptcy court were met here, much less that the bankruptcy court abused any discretion that it may have had. The plaintiffs cite a number of cases which are distinguishable. In *In re Lambert*, 76 B.R. 131 (Bankr. E.D. Wis. 1985), the bankruptcy court "construed a motion by [debtors] for termination of stay as a motion for extension of time for filing a complaint to determine dischargeability of a debt and modified the injunction under 11 U.S.C. § 524 to permit [debtors'] state court action to proceed." *Id.* at 131. Here the bankruptcy court precisely did not do that; it specifically declined to so construe the debtor's motion.

Somewhat more apposite is *In re Sherf*, 135 B.R. 810 (Bankr.

-5-

S.D. Tex. 1991), where the district court followed *Lambert*, and commented:

> The Court recognizes that the creditors were not intending to request an extension of time in the originally filed "objection" or the first "complaint," but in the interest of justice a certain "poetic license" or legal fiction should be indulged in under these facts. We join with the Court in *Lambert* in holding that a pleading that is filed before the bar date, which puts the debtor on notice as to the creditors' objections, may be treated as a motion to extend the time for filing a complaint.

*Id.* at 815. The plaintiffs here argue that Tepfer was on notice as to their objections. However, setting aside whether poetic license and fiction belong in law, the *Sherf* creditors *did* timely file papers that, with some generosity and fancy footwork, could be reconstrued as a request for the determination of the dischargeability of the debt. *See id.* at 810. The *Sherf* court construed the holding of *Lambert* as being that "a pleading that is filed before the bar date, which puts the debtor on notice as to the creditors' objections, may be treated as a motion to extend the time for filing a complaint." *Id.* at 816. But in the case before me, there was no such filing. The same reasoning means that *In re Weinstein*, 234 B.R. 862 (Bankr. E.D.N.Y. 1999) and *Tribble* are also distinguishable. In *Tribble*, as in *Lambert*, the bankruptcy court also construed the debtor's motion as a Rule 4007 request. But here, the plaintiffs filed late and missed their chance--that's all.

The plaintiffs argue that what matters in deciding whether to

treat a debtor's motion as a motion for an extension of the creditor's time to challenge the dischargeability of a debt is not that there were papers that were timely filed, but whether the debtor was on notice of the creditor's objections. They argue that Tepfer was on notice of their objections because he mentioned them in moving for a relief from the automatic stay to prosecute his appeals from the attorneys' fee judgments. No doubt he was aware that the plaintiffs wanted him to pay their attorneys' fees, but the plaintiffs cite no legal authority that notice without some sort of timely filing is sufficient. At least two courts of appeals have said that the limitations period under § 523(c)(1) is to be strictly enforced, see *Themy*, 6 F.3d at 689; *Ichinose*, 946 F.2d at 1172-73, and in the circumstances, I see no basis for departing from this rule.

The plaintiffs' second argument is based on § 523(a)(17) of the Bankruptcy Code, which states that there is no discharge for:

> a fee imposed by a court for the filing of a case, motion, complaint, or appeal, or for other costs and expenses assessed with respect to such filing, regardless of an assertion of poverty by the debtor under section 1915(b) or (f) of title 28, or the debtor's status as a prisoner, as defined in section 1915(h) of title 28.

The plaintiffs argue that the plain meaning of the statute is no fees or other costs imposed by any court with respect to any filing are dischargeable in bankruptcy, period; the subordinate clause about prisoner's status, although included by implication in the dominant clause, must be added for emphasis. The bankruptcy court

-7-

rejected this interpretation, following instead the construction of the Northern District of Indiana, which held § 523(a)(17) to apply only to prisoner filings. *South Bend Community School Corp. v. Eggleston,* 215 B.R. 1012 (N.D. Ind. 1997) (Sharp, J.). The court there noted the legislative history of the Act, specifically that Section 523(a)(17) arose under the Prison Litigation Reform of 1995, and that "this section was added specifically under the Prison Litigation Reform Act for the purported purpose of ensuring that prisoners did not continue to use *in forma pauperis* provisions as a way to avoid filing fees and to potentially reduce the number of frivolous prisoner filings." *Id.* at 1016 & n.2. That court held that the section applied only to prisoner filings, and referred to H.R. Rep. No. 324, 105th Cong., 1st Sess. (1997), 1997 WL 664411, where "the committee noted that because of a drafting error, the section might be construed to apply to filing fees, costs or expenses incurred by any debtor, not solely by those who are prisoners." *Id.*

Although the plain meaning of the statute normally controls, *Lexington Ins. Co. v. Rugg & Knopp,* 165 F.3d 1087, 1091 (7th Cir. 1999), questions are posed where, as here, the statute is ambiguous, *see* 4 Lawrence P. King, Collier on Bankruptcy ¶ 523.23, at 523-10 (15th ed. 1998) (noting ambiguity). In these circumstances it is proper to refer to legislative history. *See United Transp. Union v. Surface Transp. Bd.,* 169 F.3d 474, 480 (7th

-8-

Cir. 1999) ("[L]egislative history is certainly one potential source of meaning."); *Continental Can Co., Inc. v. Chicago Truck Drivers, Helpers and Warehouse Workers Union (Ind.) Pension Fund*, 916 F.2d 1154, 1158 (7th Cir. 1990) ("[L]egislative intent [offers] a clue to the meaning of the text."). Here the history tying the section to the PLRA counts against the plaintiffs' reading.

Moreover, even if the statute were not ambiguous, "[i]n ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). I must "look to the provisions of the whole law, and to its object and policy" to determine the statute's meaning. *United States Nat'l Bank of Ore. v. Independent Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993). The bankruptcy court was justified in relying on the fact that § 523(a)(17) was enacted as part of the PLRA to provide the necessary context.

The bankruptcy court was also correct that if Congress had intended such a large change in the bankruptcy laws, it would have been done more clearly, without the potentially confusing reference to prisoner litigation statutes. *See In re Tuttle*, 224 B.R. 606, 610 (Bankr. W.D. Mich. 1998) (citing *Cohen v. Hilda de la Cruz*, 523 U.S. 213, 222 (1998) (I "will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress

intended such a departure.").

In addition to the persuasive reasons cited by the bankruptcy court here, and the courts in *South Bend School District* and *Tuttle*, it may be added that the plaintiffs' proposed reading violates the canon of statutory interpretation that a statute is to be read so as to give effect to every term, and not to render any part superfluous. *See United States v. Martin*, 63 F.3d 1422, 1433 (7th Cir. 1995) (applying canon); *Spicer v. Chicago Bd. of Options Exchange, Inc.*, 977 F.2d 255, 260 (7th Cir. 1992) (same). The plaintiffs argue that the bankruptcy court commits this sin in rendering the term "regardless" superfluous, which I do not see, but their own interpretation renders the whole subordinate clause superfluous. The plaintiffs would have it that, under the dominant clause of § 523(a(17) no court-imposed fees or costs related to a filing are dischargeable in bankruptcy, whether imposed on a prisoner or otherwise. In that case the subordinate clause, specifically referring to prisoner filings, would be superfluous.

The plaintiffs invoke a case that was reversed on appeal on the very point at issue under this argument, *In re Hough*, 228 B.R. 264, 265 (D. Idaho 1997), *rev'd by* 239 B.R. 412, 415 (9th Cir. 1999). While all out-of-circuit authority (other than the United States Supreme Court) is merely persuasive on a matter of federal law, I am more persuaded by the Ninth Circuit's reasoning, following the line of arguments indicated, than the District of

Idaho's.

AFFIRMED

ENTER ORDER:

_____
**Elaine E. Bucklo**
United States District Judge

Dated: July 16, 2002